## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IAC/INTERACTIVECORP, ASK MEDIA GROUP, LLC, f/k/a IAC PUBLISHING, LLC, and BLUECREW, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>ADAM ROSTON,<br><br>    Defendant. | Case No. 20-cv-3440<br><br>Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant's motion to dismiss plaintiffs' complaint [49]. For the reasons set forth below, the motion is granted.

### I. Background

The following facts are taken from the First Amended Complaint ("FAC"). In evaluating the motion to dismiss, the Court accepts as true the FAC's well-pleaded factual allegations. The court also considers documents attached to the motion to dismiss that are part of the pleadings, meaning that they are referred to in the plaintiffs' complaint and are central to the claims. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018).

This case arises out of the deteriorating relationship between defendant Adam Roston and his former employers IAC/InterActiveCorp ("IAC"), Ask Media Group, LLC, f/k/a IAC Publishing, LLC ("IAC Publishing"), and Bluecrew, Inc. ("Bluecrew"). IAC is incorporated in Delaware and headquartered in New York. IAC Publishing, an IAC subsidiary, is incorporated in

1

Delaware and headquartered in California. Bluecrew, another IAC subsidiary, is incorporated in Delaware and headquartered in Illinois.

Defendant worked for IAC and its subsidiaries from 2011 to 2020. He was the Chief Executive Officer of IAC Publishing from around May 2016 to February 2019. Defendant entered into an employment agreement with IAC Publishing in June 2017, which was retroactively effective to July 2016. This agreement contained a forum-selection clause stating:

> "[t]his Agreement and the legal relations thus created between the parties hereto (including, without limitation, any dispute arising out of or related to this Agreement) shall be governed by and construed under and in accordance with the internal laws of the State of California without reference to its principles of conflicts of laws. Any such dispute will be heard and determined before an appropriate federal court located in the State of California in Alameda County, or, if not maintainable therein, then in an appropriate California state court located in Alameda County, and each party hereto submits itself and its property to the non-exclusive jurisdiction of the foregoing courts with respect to such disputes." Dkt. 51, Exhibits to Defendant's Motion to Dismiss, at 10.

While defendant was CEO of IAC Publishing, he received compensation through a salary and Stock Appreciation Rights ("SARs"). Defendant could exercise vested SARs at various times and earn a profit depending on the difference between the fair market value ("FMV") of the stock, which the board of IAC Publishing determined, and the price specified in the SARs. Defendant challenged the board's FMV determinations, resulting in the board changing the FMV determinations on multiple occasions. Around February 2019, defendant became CEO of Bluecrew, another IAC company. Defendant was terminated on March 30, 2020 and was provided a draft separation agreement on April 2, 2020. After his termination, defendant kept a company-provided laptop that contained documents and data from each of the plaintiffs.

## II.     Legal Standard

*Forum non conveniens* allows courts to dismiss suits they have jurisdiction over in favor of the convenience of the parties and to effectuate justice. *See Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund,* 589 F.3d 417, 421 (7th Cir. 2009). Courts evaluate both public and private interest factors in

2

determining whether to dismiss for *forum non conveniens*. Private factors include access to sources of proof, cost of attendance for willing witnesses, and other practical concerns relating to the ease and expense of a trial. *Id.* (citing *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008)). Public factors include "the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.*

When a forum-selection clause applies, courts only analyze the public interest factors and not the private interest factors. *Mueller*, 880 F.3d at 894. By agreeing to a forum-selection clause, parties waive the right to challenge that forum as inconvenient. *Id.* Public interest factors are generally too weak to override the selected forum, resulting in forum-selection clauses controlling in most cases. *Id.*

**III.    Analysis**

*Applicability of the Forum-Selection Clause from the 2016 Employment Agreement*

The parties mainly dispute whether a forum-selection clause applies here. Defendant argues that the forum-selection clause in his 2016 employment agreement is controlling. Plaintiffs argue that the clause does not apply because the agreement expired by default when defendant began working for Bluecrew. Defendant points to plaintiffs' draft separation agreement, which was sent to defendant in April 2020 and refers to termination of the employment agreement, as evidence that the parties understood the employment agreement to govern their relationship through defendant's termination and was not replaced by the term sheet. Plaintiffs point to a "term sheet" that they claim governed defendant's employment relationship with Bluecrew and replaced the employment agreement.

3

Plaintiffs' arguments fail. The Court is not persuaded by plaintiffs' argument that the 2016 employment agreement stated that it would continue "until [Roston's] employment with the Company [IAC Publishing] is terminated [which occurred in February 2019]." Dkt. 70, Plaintiffs' Opposition to Defendant's Motion to Dismiss, at 6. A review of plaintiffs' own draft separation agreement with defendant clearly states that it is terminating "the employment agreement between you and the Company, effective as of July 1, 2016 (the "Employment Agreement")…" Dkt. 51, Exhibits to Defendant's Motion to Dismiss, at 75. The separation agreement purported to terminate the employment agreement as of April 2, 2020, not February 2019. Based on that same separation agreement, plaintiffs' claim that the separation agreement does not even mention the 2016 employment agreement is blatantly false. Plaintiffs have never mentioned any other agreement that this clause in the separation agreement could possibly refer to other than the 2016 employment agreement.

The separation agreement clearly demonstrates the parties assumed that the 2016 employment agreement controlled defendant's employment with all IAC companies, including Bluecrew. Defendant attempted to draft a separate employment agreement with Bluecrew, but the fact that such agreement was not executed or even informally agreed to shows that the original 2016 agreement governed his employment with Bluecrew. Plaintiffs argue that a term sheet issued when defendant became CEO of Bluecrew supersedes the 2016 employment agreement. The term sheet is unsigned, short (less than one page), and informal (rife with errors and vague language). It does not describe defendant's role as CEO of Bluecrew, include a governing law provision, or contain signature blocks. The clause plaintiff relies on states that "[t]he terms contained herein supersede all previous employment arrangements between Executive and any affiliate of IAC." Dkt. 70-6, Exhibit 6 to Plaintiffs' Opp., at 2.

Given the limited nature of the term sheet and the fact that it is not signed by any party, it is apparent that this term sheet was not meant to completely replace the 2016 employment agreement (a nine-page document that is far more detailed and fully executed). *See, e.g., Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 564 (7th Cir. 2012) (noting that a contract is enforceable if the Court can ascertain what the parties have agreed to and finding that there is no contract if the essential terms are too uncertain). Rather, the terms in the term sheet were meant to supersede the corresponding terms in the employment agreement. The term sheet operates as an addendum, not replacement, to the employment agreement. Perhaps plaintiffs intended to draft a separate employment agreement, but their lethargy in doing so means that the 2016 employment agreement is the operative one governing defendant's Bluecrew employment. The Court rejects plaintiffs' contention that no signed agreement governed such employment. The Court finds that the 2016 employment agreement controlled defendant's employment through his termination, including his employment with Bluecrew.

Plaintiffs argue that even if the 2016 employment agreement applied, their claims do not arise out of or relate to the agreement and that the forum-selection clause thus does not apply. This argument is unavailing. First, plaintiffs themselves argue that defendant violated the 2016 employment agreement's provision requiring him to "deliver or return to the Company, at the Company's Request at any time or upon termination or expiration of Executive's employment or as soon thereafter as possible all documents, computer tapes and disks, records…" Dkt. 70, Plaintiffs' Opp. at 10. Since plaintiffs have argued that defendant's appropriation of a Bluecrew-issued laptop violates the 2016 employment agreement, the claims regarding the laptop clearly arise out of the 2016 agreement. The confidentiality provision may survive expiration of the agreement, but it is still part of that agreement. Separately from the confidentiality provision, all claims are clearly related to defendant's employment agreement. Were it not for defendant's employment with IAC and

Bluecrew (which are governed by the employment agreement), he would not have received the SARs or laptop at issue.

The Court also rejects plaintiffs' contention that the forum-selection clause's reference to "non-exclusive jurisdiction" means this case can be brought here. While the clause is poorly written, that clause clearly refers to the non-exclusive jurisdiction of the California courts (state versus federal), not the non-exclusive jurisdiction of California courts as opposed to courts in other states. The Court also is not impressed with plaintiffs' argument that California does not have personal jurisdiction over Bluecrew. To the contrary, the California state court in which the related case is currently proceeding held that it was "inclined to find…that it has personal jurisdiction over Bluecrew," noting that Bluecrew's publicly filed documents list a California address as its principal business address. Dkt. 31, Notice of Court Orders in Related Action, at 9; *see also McAtee v. City of Chicago*, No. 17-cv-5677, 2018 WL 704690, at *2 (N.D. Ill. Feb. 5, 2018) (noting that Courts can take judicial notice of matters of public record, such as proceedings in other courts). The Court finds that the forum-selection clause selecting California applies.

*Public Interest Factors*

Since the Court has determined the forum-selection clause applies, it now turns to the public interest factors of administrative difficulties, local interest, interest in having trial in a forum at home with the governing law, avoidance of unnecessary problems of conflicts of laws, and unfairness of burdening citizens in an unrelated forum with jury duty. Plaintiffs argue that these factors favor adjudicating the dispute in Illinois, pointing to defendant's residence in Illinois while employed at Bluecrew and how Bluecrew's headquarters are in Illinois.

The parties in this case are IAC, which is a Delaware corporation headquartered in New York; IAC Publishing, a Massachusetts corporation based in California; Bluecrew, a Delaware corporation headquartered in Illinois; and Roston, who lived and worked in California while at IAC

6

companies aside from his one year with Bluecrew, during which time he mainly worked in Illinois and came back to California one week per month.  Defendant currently lives in California with his daughter and the laptop at issue is in California.

There is little local interest in resolving this case here.  Most of the complaint relates to defendant's use of a laptop that plaintiffs claim was issued to him by Bluecrew.  Plaintiffs allege that this laptop was owned by all plaintiffs, not just Bluecrew.  *See, e.g.* Dkt. 38, FAC at ¶ 92.  Plaintiffs repeatedly allege that this laptop contains data and documents from each of the plaintiffs, including the New York-based IAC and California-based IAC Publishing, not just Illinois-based Bluecrew.  *Id.* at ¶ 80-81.  Because this laptop contains data from all plaintiffs, defendant's alleged violation would impact all plaintiffs and not just Bluecrew.  Further, plaintiffs challenge defendant's appropriation of another laptop from California-based IAC Publishing.  Throughout their opposition to the motion to dismiss, plaintiffs do not just refer to defendant's use of the Bluecrew laptop; they refer to defendant's use of "Plaintiffs' Property."

The declaratory judgment claim for the SAR valuations clearly stems from defendant's time at California-based IAC Publishing.  Defendant's only connection to Illinois is his short tenure at Bluecrew.  Defendant only spent one year in Illinois, compared to the eight years in California (approximately three of which were CEO of a California-based company).  It is difficult for this Court to comprehend how "the heart" of plaintiffs' case can possibly be Illinois.  It would be unfair to burden Illinois citizens with this case, which appears to have a myriad of governing laws (given that the employment agreement designates California law as governing law but pursuant to the incentive plan, Delaware law might govern the stock valuation dispute) and issues with conflicts of laws that will only be exacerbated by allowing this complaint here.  California is more familiar than Illinois with the relevant governing law.  Although administrative difficulties may burden both California and Illinois courts, the balance of this factor does not outweigh the others.

This not the "unusual" case in which a forum-selection clause would not apply. *Mueller*, 880 F.3d at 894. Illinois has little to no interest in resolving this case. That and the remaining public interest factors strongly favor dismissal.

## IV.     Conclusion

The parties contractually agreed to litigate this dispute in California and will be held to that agreement. Plaintiffs' complaint is dismissed for *forum non conveniens*. **IT IS SO ORDERED**.

Date:   July 15, 2021                                               Entered: _____
                                                                                          SHARON JOHNSON COLEMAN
                                                                                          United States District Court Judge